IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| CFN INTERNATIONAL LP, a Florida limited partnership, and ELAN GLOBAL, INC., a Delaware corporation doing business in Texas,<br><br>Plaintiffs,<br><br>v.<br><br>SEVEA INTERNATIONAL, INC., a Nevada corporation; MICHAEL MACRIS, an individual; JERRY D. SAXTON, an individual, KATIE SAXTON, an individual; CHRISTINA MCNALLY, an individual; FLOWERING SCENTS, LLC, a Nevada limited liability company; MACRIS ENTERPRISES, LLC, a Nevada corporation; AMERICAN EQUITIES MANAGEMENT, LLC, a Texas limited liability company; ARTIFICIAL NAIL TECHNOLOGIES, INC., a Utah corporation; JUSTIN M. WILLIAMS, an individual; RONALD G. STEFFEN, an individual; TRUE FIT NAILS, LLC, a Utah limited liability company; CRAIG P. GIFFORD, an individual; SCOTT L. NIELSON, an individual; ANGELS OF AMERICA, LLC, a Texas limited liability company, and STACI GIFFORD, an individual,<br><br>Defendants. | **COMPLAINT FOR DECLARATORY JUDGMENT OF OWNERSHIP OF A CERTAIN PATENT APPLICATION AND ISSUING PATENTS AND UNFETTERED RIGHT TO PRACTICE SAME WITHOUT REPRISAL OF CLAIM FOR PATENT INFRINGEMENT**<br><br><br><br>Civil No. 2:09-cv-126 |

## PLAINTIFFS' ORIGINAL COMPLAINT

NOW COMES, CFN INTERNATIONAL LP and ELAN GLOBAL, INC. (collectively

referred to as "Plaintiffs") and file their COMPLAINT FOR DECLARATORY JUDGMENT

FOR OWNERSHIP OF A CERTAIN PATENT APPLICATION AND ISSUING PATENTS

AND UNFETTERED RIGHT TO PRACTICE SAME WITHOUT REPRISAL OF CLAIM FOR

PATENT INFRINGEMENT against Defendants SEVEA INTERNATIONAL, INC., MICHAEL MACRIS, JERRY D. SAXTON, KATIE SAXTON, CHRISTINA MCNALLY, FLOWERING SCENTS, LLC, MACRIS ENTERPRISES, LLC, AMERICAN EQUITIES MANAGEMENT, LLC, ARTIFICIAL NAIL TECHNOLOGIES, INC., JUSTIN M. WILLIAMS, RONALD G. STEPHEN, TRUE FIT NAILS, LLC, CRAIG P. GIFFORD, SCOTT L. NIELSON, ANGELS OF AMERICA, LLC, and STACI GIFFORD (collectively referred to as "Defendants").  In support thereof, Plaintiffs respectfully state as follows:

## I.  INTRODUCTION

1.      Plaintiffs bring this action pursuant to 28 U.S.C. §2201 for a declaratory judgment that Defendants do not have any valid ownership interests or rights in a certain pending patent application and patent(s) issuing therefrom (hereinafter "'456 patent application") and, consequently, that Plaintiffs have the exclusive and unfettered right against Defendants to make, use, sell, and offer for sale the technology encompassed by the '456 patent application, inclusive of customized, artificial finger nail products made from practicing said technology.  Plaintiffs further bring this action for a declaration that Defendants may not engage nor seek to engage in the practice of the technology encompassed by the '456 patent application and any patent(s) issuing therefrom in the absence of authorization and a properly obtained license from Plaintiffs and that any such prohibited conduct will constitute patent infringement.

## II.  PARTIES

2.      Plaintiff CFN International LP (hereinafter "CFN") is a Florida limited partnership and has its principal place of business at P.O. Box 8413, Longboat Key, Florida 34228.

-2-

3.      Plaintiff Elan Global, Inc. (hereinafter "ELAN") is a Delaware corporation registered to do business in Texas as a foreign corporation and has its principal place of business at 2860 Exchange Boulevard, Southlake, Texas 76092.

4.      Upon information and belief, Defendant Sevea International, Inc. (hereinafter "Sevea") is a Nevada corporation and had its principal place of business at 2550 South Decker Lake Boulevard, No. 1, West Valley City, Utah 84119.  Plaintiffs are informed and believe, and on that basis allege, that Sevea was at all times mentioned in this Complaint transacting business in the State of Texas and in this judicial District through its distributors.

5.      Upon information and belief, Defendant Michael N. Macris (hereinafter "Macris") is an individual who resides in the State of Nevada and is or was the Secretary/Treasurer of Sevea.  Plaintiffs are informed and believe, and on that basis allege, that Macris was at all times mentioned in this Complaint transacting business in the State of Texas and in this judicial District by means of directing Sevea's distributors and their respective sales.

6.      Upon information and belief, Defendant Jerry D. Saxton (hereinafter "Jerry Saxton") is an individual who resides in the State of Texas and who is or was the Chief Executive Officer of Sevea and who is also the managing member of American Equity Management, LLC.  Plaintiffs are informed and believe, and on that basis allege, that Jerry Saxton was at all times mentioned in this Complaint transacting business in the State of Texas and in this judicial District by means of American Equity Management, LLC and by way of directing Sevea's distributors and their respective sales.

7.      Upon information and belief, Defendant Katie Saxton is an individual who resides in the State of Texas and who is or was the Director of Marketing of Sevea.  Plaintiffs are

informed and believe, and on that basis allege, that Katie Saxton was at all times mentioned in this Complaint transacting business in the State of Texas and in this judicial District by way of directing Sevea's distributors and their respective sales.

8.    Upon information and belief, Defendant Christina McNally  (hereinafter "McNally") is an individual who resides in the State of Nevada and who is or was the Vice President of Product Development of Sevea.  Plaintiffs are informed and believe, and on that basis allege, that McNally was at all times mentioned in this Complaint transacting business in the State of Texas and in this judicial District by way of directing Sevea's distributors and their respective sales.

9.    Upon information and belief, Defendant Flowering Scents, Inc. (hereinafter "FS") is a Nevada corporation and has its principal place of business at 7204 West Washington Avenue, Las Vegas, Nevada 89128.  Plaintiffs are informed and believe, and on that basis allege, that FS was at all times mentioned in this Complaint transacting business in the State of Texas and in this judicial District through its distributors.

10.    Upon information and belief, Defendant Macris Enterprises, LLC (hereinafter "Macris Enterprises") is a Nevada limited liability company and has its principal place of business at 508 Carlton Kay Place, Las Vegas, Nevada.

11.    Upon information and belief, Defendant American Equities Management, LLC (hereinafter "AEM") is a Texas limited liability company and has its principal place of business at P.O. Box 94210, Southlake, Texas 76092.

12.    Upon information and belief, Defendant Artificial Nail Technologies, Inc. (hereinafter "ANT") is a Utah corporation and has its principal place of business at 2550 South

Decker Lake Boulevard, No. 1, West Valley City, Utah 84119.  Plaintiffs are informed and believe, and on that basis allege, that ANT was at all times mentioned in this Complaint transacting business in the State of Texas and in this judicial District through its distributors.

13.     Upon information and belief, Defendant Justin M. Williams  (hereinafter "Williams") is an individual who resides in the State of Utah and who is or was a corporate officer and/or director of ANT.  Plaintiffs are informed and believe, and on that basis allege, that Williams was at all times mentioned in this Complaint transacting business in the State of Texas and in this judicial District by way of directing ANT's distributors and their respective sales.

14.     Upon information and belief, Defendant Ronald G. Steffen (hereinafter "Steffen") is an individual who resides in the State of California and who is or was a corporate officer and/or director of ANT.  Plaintiffs are informed and believe, and on that basis allege, that Steffen was at all times mentioned in this Complaint transacting business in the State of Texas and in this judicial District by way of directing ANT's distributors and their respective sales.

15.     Upon information and belief, Defendant True Fit Nails, LLC (hereinafter "TFN") is a Utah limited liability company and has its principal place of business at 2550 South Decker Lake Boulevard, No. 1, West Valley City, Utah 84119.  Plaintiffs are informed and believe, and on that basis allege, that TFN was at all times mentioned in this Complaint transacting business in the State of Texas and in this judicial District through its distributors.

16.     Upon information and belief, Defendant Dr. Craig Gifford (hereinafter "Dr. Gifford") is an individual who resides in the State of Texas and who is or was a corporate officer and/or director of both TFN and ANT.  Plaintiffs are informed and believe, and on that basis allege, that Dr. Gifford was at all times mentioned in this Complaint transacting business in the

State of Texas and in this judicial District by way of directing TFN's and/or ANT's distributors and their respective sales.  Additionally, Dr. Gifford is a co-inventor who assigned all right, title, and interest in the '456 patent application and any patent(s) issuing therefrom to AEM.

17.     Upon information and belief, Defendant Scott L. Nielson (hereinafter "Nielson") is an individual who resides in the State of Utah and who is or was a corporate officer and/or director of both TFN and ANT.  Plaintiffs are informed and believe, and on that basis allege, that Nielson was at all times mentioned in this Complaint transacting business in the State of Texas and in this judicial District by way of directing TFN's and/or ANT's distributors and their respective sales.   Additionally, Nielson is a co-inventor who assigned all right, title, and interest in the '456 patent application and any patent(s) issuing therefrom to AEM.

18.     Upon information and belief, Defendant Angels of America, LLC is a Texas limited liability company.

19.      Upon information and belief, Defendant Staci Gifford is an individual who resides in the State of Texas.

### III.  JURISDICTION AND VENUE

20.     This action arises under the Federal Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, and the patent laws of the United States, 35 U.S.C. § 1, *et. seq.*  An actual, substantial, and continuing justiciable controversy exists between Plaintiffs and Defendants with respect to which Plaintiffs require a declaration that they have the right to make, use, sell, and offer for sale the technology encompassed in the '456 patent application and any patent(s) issuing therefrom by this Court and that Defendants do not have any valid ownership interests or rights in or to the '456 patent application so as to deny Plaintiffs' right to be in business practicing said

-6-

technology.

21.     This Court's jurisdiction is based upon a federal question, arising under the above stated patent laws, which vests subject matter jurisdiction exclusively in the Federal Court under 28 U.S.C. §§ 1331, 1338(a), 2201, and 2202.  Plaintiffs also invoke the pendent, ancillary, and other jurisdiction of the Court to which Plaintiffs may show themselves entitled.

22.     Venue is proper pursuant to 28 U.S.C. §§ 1391 and 1400 because Defendants have conducted business in the State of Texas and in this judicial district and have purposefully availed themselves of the benefits and laws of the State of Texas.

23.     An actual, substantial, and continuing justiciable controversy exists in this action because Plaintiffs have a real and reasonable apprehension of litigation based on Defendants' prior assertion of ownership interests in the '456 patent application in proceedings before a U.S. District Court in Utah and a Utah State Court.  Defendants' history of instigating litigation in various courts concerning ownership of the '456 patent application at issue unquestionably implies a real and actual threat of impending legal action by the Defendants against the Plaintiffs as the new owner and exclusive licensee of the '456 patent application, respectively. Furthermore, an actual controversy exists in this action because Plaintiffs have engaged in a course of conduct evidencing a definite intent and ability to practice the technology comprehended by the '456 patent application.

## IV.  FACTS

24.     On June 3, 1997, U.S. Patent Application No. 08/868,264 entitled "Methods for Manufacturing Precision Fit Fingernails" was filed in the U.S. Patent and Trademark Office by Dr. Gifford, as the sole inventor.  This patent application was directed to a method for

manufacturing artificial fingernails and forming a model of a desired artificial fingernail which was then enclosed within an investment material in order to form a negative cast for receiving an injected acetone resistant thermoplastic material.  The thermoplastic material was then separated from the negative cast in the shape of the desired artificial fingernail.  On October 19, 1999, this patent application was issued by the U.S. Patent and Trademark Office as U.S. Patent No. 5,968,302 (hereinafter "'302 patent").

25.    On August 10, 1999, Dr. Gifford, as the sole inventor, filed another patent application referred to in the U.S. Patent and Trademark Office as U.S. Patent Application No. 09/371,680 entitled "Precision Fit Fingernails."  This patent application was directed to an artificial fingernail including a fingernail body having an inner face extending from a tail end to an opposing tip end, wherein at least a portion of the inner face of the fingernail body has a configuration substantially identical in complement to the exposed top surface of a specific real fingernail.  On March 6, 2001, this patent application was issued by the U.S. Patent and Trademark Office as U.S. Patent No. 6,196,234 (hereinafter "'234 patent").

26.    In 2002, Dr. Gifford and Nielson formed TFN to pursue the artificial nail business based on the technologies previously developed by Dr. Gifford.  On August 2, 2003, Dr. Gifford assigned to TFN all right, title, and interest in the '302 patent and the '234 patent.  This assignment was subsequently filed with the Assignment Recordation Branch of the U.S. Patent and Trademark Office and officially recorded on January 31, 2005 as Reel/Frame 015621/0255.

24.    In June 2005, Dr. Gifford, Nielson, and Williams formed ANT.  The purpose of ANT was to pursue the artificial nail business that Dr. Gifford and Nielson had been pursuing as TFN.

25.     On or about June 15, 2005, Dr. Gifford, on behalf of TFN, executed an assignment of all right, title, and interest to the '302 patent and the '234 patent to ANT.  This assignment was subsequently filed with the Assignment Recordation Branch of the U.S. Patent and Trademark Office and officially recorded on July 21, 2005 as Reel/Frame 016290/0367.

26.     In January 2006, Macris, on behalf of FS, and Nielson and Williams, on behalf of ANT, began discussions regarding the formation of a joint business venture, to be known as Sevea, into which they would combine their respective businesses and assets.

27.     On February 28, 2006, ANT and FS formalized their joint business venture by entering into an Asset Contribution Agreement ("ACA").  A copy of the ACA is attached hereto as Exhibit A.

28.     Under Section 1 of the ACA, ANT was contractually required to contribute substantially all of the assets of ANT, inclusive of ANT's lease of its retail location, all product inventory, business furnishings, equipment, leasehold improvements, supplies, materials, and intellectual property including trade secrets, customer lists, all financial information, price lists, supplier lists, books and records, data, files, records, notebooks, software, and other computer records to the new formed entity Sevea.

29.     In particular, the asset transfer contemplated by the ACA included the assignment of the '302 patent and the '234 patent, together with nine pending patent applications identified hereinbelow (collectively referred to herein as "intellectual property").

30.     The Assignment to Sevea of all right, title, and interest in the '302 patent and the '234 patent was executed by Dr. Gifford as Chairman and CSO of ANT.  A copy of the Assignment of  the '302 patent and the '234 patent are attached hereto as Exhibit B.

31.    The Assignment to Sevea of all right, title, and interest in the nine pending patent applications was executed by the joint inventors, Dr. Gifford and Nielson.  A copy of this Assignment is attached hereto as Exhibit C.

32.    Importantly, the Assignment transferring all right, title, and interest in the '302 patent and the '234 patent from ANT to Sevea, and the Assignment transferring all right, title, and interest in the nine pending patent applications from Dr. Gifford and Nielson to Sevea were not recorded in the U.S. Patent and Trademark Office, as required under the applicable patent laws and statutes.

33.    According to Section 1.3 of the ACA, the consideration for the transfer and assignment of the assets and intellectual property of ANT to Sevea was the issuance of ten million shares of common stock in Sevea.

34.    Despite ANT entering into the ACA and contributing substantially all of its assets, inclusive of the intellectual property, ANT never received the ten million shares of common stock in Sevea or any other type of consideration from Sevea.

35.    On July 25, 2006, ANT filed a Verified Complaint in the U.S. District Court for the District of Utah, Central Division, which was assigned Civil No. 2:06CV609.  The Complaint, in part, sought declaratory judgment that ANT's failure to receive its bargained-for exchange (the 10 million shares of Sevea common stock) from Sevea, contending the ACA had been terminated for lack of consideration and, accordingly, that the Assignments of the intellectual property to Sevea were therefore void.  A copy of the Verified Complaint in the Utah federal action is attached hereto as Exhibit D.

36. Nearly seven months after ANT had filed its Complaint in the U.S. District Court in Utah seeking declaratory relief for patent infringement and breach of contract against Sevea et al., on or about February 22, 2007, Macris and Macris Enterprises filed a shareholder derivative action against Sevea, Jerry and Katie Saxton, and Dr. Gifford in the Third Judicial District Court of Salt Lake County, Utah which was assigned Case No. 070903010. A copy of the Verified Complaint that was filed in the Utah State Court (excluding exhibits) is attached hereto as Exhibit E.

37. In the shareholder derivative action, Macris and Macris Enterprises asserted that Sevea had significant intellectual property encompassing trade secrets, patents, patents pending, and trademarks directed to the development of custom fitting, reusable, mass produced thermoplastic fingernails. *See* Exhibit E at ¶ 14.

38. On May 4, 2007, Judge Robert Faust, the sitting judge in the Utah State Court action, issued Findings of Fact, Conclusions of Law, and Preliminary Injunction (hereinafter "Preliminary Injunction"). A copy of this Preliminary Injunction is attached hereto as Exhibit F.

39. In the Preliminary Injunction, the Court enjoined Jerry and Katie Saxton from "developing, manufacturing, and/or selling custom fitting, reusable, mass produced fingernails" and "from obtaining, using, or disclosing any confidential, proprietary trade secret information belonging to Sevea International, Inc., including but not limited to information concerning Sevea International, Inc.'s customers and customer lists, Distributors and Distributor lists, patents, patents pending, trademarks (including "Simply Perfect Nails"), inventions, discoveries, methods of sales and marketing, Sevea International, Inc.'s pricing and costs, and any specialized or

particular requirements or needs of Sevea International, Inc.'s customers or Distributors."  *See* Exhibit F at p. 18, ¶¶ 2(b) and 2(e).

40.    On July 5, 2007, the Honorable Dale A. Kimball, the sitting judge in the U.S. District Court action in Utah, issued Findings of Fact, Conclusions of Law, and Order on ANT's Motion for Writ of Replevin (hereinafter "Federal Writ of Replevin Order").  A copy of the Federal Writ of Replevin Order is attached hereto as Exhibit G.

41.    In the Federal Writ of Replevin Order, the Court determined that ANT had delivered to Sevea physical and constructive possession of its assets, including the intellectual property used to manufacture artificial nail products consistent with the terms of the ACA and that Sevea was continuing to manufacture artificial nails using all of ANT's resources, including the intellectual property.  *See* Exhibit G at ¶ 7.

42.    Importantly, the Court held that it was *undisputed* that ANT had never received the 10 million shares of Sevea stock that was required to be issued under the ACA to ANT for the contributions of its assets to Sevea."  *See* Exhibit G at ¶ 8.

43.    The Court further explained that the ACA between ANT and Sevea had *failed* without payment of any consideration.  *See* Exhibit G at p. 7, ¶ 4.

44.    In conjunction with the Federal Writ of Replevin Order, the Court ordered Sevea ". . . to return to ANT all items, including intellectual property, patents, patents pending and anything used by Sevea to manufacture artificial nails that was contributed to Sevea by ANT."  *See* Exhibit G at p. 9, ¶¶ 1 and 2.

45.    Consistent with the issuance of the Federal Writ of Replevin Order, Sevea was to return the intellectual property that ANT had contributed to Sevea in consideration of entering

into the ACA (as set forth in Exhibits B and C attached hereto) thereby negating the prior assignments ANT and Dr. Gifford and Nielson, respectively, had executed transferring ownership of the '302 patent and the '234 patent and the nine pending patent applications to Sevea.

46. Pursuant to the issuance of the Federal Writ of Replevin Order, Dr. Gifford and Nielson assigned all right, title, and interest in the nine pending patent applications, that had been previously assigned to Sevea under the ACA, to AEM on August 29, 2007, in exchange for good and valuable consideration. These Assignments were filed with the Assignment Recordation Branch of the U.S. Patent and Trademark Office and officially recorded on September 24, 2007 as Reel/Frame 019869/0719. Copies of the electronic records of the U.S. Patent and Trademark Office confirming the assignment and recordation of the transfer of ownership from Dr. Gifford and Nielson to AEM are attached hereto as Exhibit H.

47. Almost four months after assigning all right, title, and interest in the nine pending patent applications to AEM, Dr. Gifford and Nielson, as co-inventors, filed U.S. Patent Application No. 11/957,456 entitled "System and Method For Precision Fit Artificial Fingernails" in the U.S. Patent and Trademark Office on December 15, 2007 (hereinafter "'456 patent application"). The '456 patent application is directed to a system that utilizes a scanned and digitized nail surface to form a precision fit three-dimensional digitized artificial nail object that can be used to direct a machining device that either creates an artificial fingernail from blank stock, or to machine a custom mold that can be used to make multiple artificial fingernails having the same shape.

48.    The '456 patent application was filed with the U.S. Patent and Trademark Office nearly 2 years *after* ANT and FS entered into the ACA.  Importantly, the technology disclosed and taught in the '456 patent application had not been invented at the time ANT and FS entered into the ACA.

49.    The '456 patent application, filed on December 15, 2007 with the U.S. Patent and Trademark Office, was conceived by Dr. Gifford and Nielson after the Utah State Court issued its Preliminary Injunction on May 4, 2007.  As noted above, the '456 patent application encompasses new technology that was not the subject of, nor contemplated by the ACA.

50.    Dr. Gifford and Nielson assigned all right, title, and interest in the '456 patent application to AEM in exchange for good and valuable consideration.  Copies of these Assignments are attached hereto as Exhibit I.

51.    In view of the existing Preliminary Injunction issued by the Utah State Court against the Saxtons and effectively AEM from "developing, manufacturing, and/or selling custom fitting, reusable, mass produced fingernails," AEM assigned all right, title, and interest in the '456 patent application to CFN on April 3, 2009.  A copy of this Assignment is attached hereto as Exhibit J.

52.    On April 8, 2009, CFN filed the Assignment from AEM of the '456 patent application with the U.S. Patent and Trademark Office to be officially recorded pursuant to the applicable patent statutory requirements.

53.    This Assignment was officially recorded by the Recordation Branch of the U.S. Patent and Trademark Office on April 8, 2009 at Reel/Frame 022523/0724.  A copy of the

electronic record of the U.S. Patent and Trademark Office confirming the assignment and recordation of the transfer of ownership from AEM to CFN is attached hereto as Exhibit K.

54.   CFN has since granted an exclusive license to ELAN to begin practicing the technology disclosed and taught in the '456 patent application, and, correspondingly, to begin making, using, selling, and offering for sale customized, disposable, artificial fingernail products to consumers.

55.   ELAN possesses the intent and ability to practice the technology disclosed and taught in the '456 patent application owned by CFN and to readily engage in the production, marketing, distribution, and sale of customized, disposable, artificial nail products.

## V. CAUSES OF ACTION

### FIRST COUNT: Declaratory Judgment of Ownership of Patent Rights

56.   Plaintiffs repeat and reallege paragraphs 1-55 as above as if fully set forth herein.

57.   CFN owns all right, title, and interest to the '456 patent application and any patent(s) issuing therefrom pursuant to the lawful assignment of ownership from AEM and, accordingly, CFN has the right to grant exclusive license to ELAN to make, use, sell, and offer for sale customized, disposable, artificial fingernail products as disclosed and taught in the '456 patent application to the consuming public.

58.   Defendants, however, assert that they own all right, title, and interest to the '456 patent application.

59.   All conditions precedent to ownership have been met pursuant to the statutory recordation requirements set forth under 35 U.S.C. § 261 for a subsequent purchaser of patent rights.

60.     There is an actual controversy within the meaning of 28 U.S.C. §§ 2201 and 2202, in that both Plaintiffs and Defendants claim ownership of the technology disclosed and taught in the '456 patent application.

61.     Specifically, Defendants Macris and Macris Enterprises have asserted that the language of the Preliminary Injunction issued by the Utah State Court prevents AEM from having any ownership interest in any technology related or, even remotely related, to methods of manufacturing artificial nail products, inclusive of technology underlying the '456 patent application, whereby implying the real threat of impending legal action against Plaintiffs seeking to invalidate CFN's ownership in the '456 patent application and, accordingly, ELAN's right, as the exclusive licensee of CFN, to make, use, sell, and/or offer for sale customized, disposable, artificial fingernails and therefore practice the technology disclosed and claimed in the '456 patent application.

62.     In addition, Defendants ANT and Williams have specifically asserted an exclusive ownership interest in the '456 patent application thus implying the real threat of impending legal action against Plaintiffs whereby seeking to invalidate CFN's ownership in the '456 patent application and, accordingly, ELAN's right, as the exclusive licensee of CFN, to make, use, sell, and/or offer for sale customized, disposable, artificial fingernails and therefore practice the technology disclosed and claimed in the '456 patent application.

63.     Plaintiffs therefore seek a declaratory judgment that CFN owns all right, title, and interest to the '456 patent application and, accordingly, that CFN had the right to grant an exclusive license to ELAN to practice and exploit said technology.

**SECOND COUNT: Declaratory Judgment of Non-Infringement**

64.     Plaintiffs repeat and reallege paragraphs 1-63 as above as if fully set forth herein.

65.     To the extent that Plaintiffs possess the intent and ability to practice the technology disclosed and taught in the '456 patent application and readily engage in the production, marketing, distribution, and sale of customized, disposable, artificial nail products, Plaintiffs seek a declaratory judgment that they have not infringed upon any patents of Defendant ANT, specifically the '302 patent and the '234 patent.

66.     There is a real and reasonable apprehension of actual controversy within the meaning of 28 U.S.C. §§ 2201 and 2202, in that Defendant ANT owns the '302 patent and the '234 patent and ANT brought a federal action for patent infringement in the U.S. District Court in Utah against Sevea for practicing the technology disclosed and claimed in the '302 patent and the '234 patent.

67.     Plaintiffs therefore seek a declaratory judgment that ELAN, as the exclusive licensee of CFN to make, use, sell, and/or offer for sale products manufactured pursuant to the technology disclosed and taught in the '456 patent application, does not infringe on any patents belonging to ANT and, accordingly, that ELAN has the right to freely practice and exploit the technology underlying the '456 patent application and any patent(s) issuing therefrom without reprisal by ANT for patent infringement.

## VI.  JURY DEMAND

Plaintiffs hereby demand a jury trial.

## VII. <u>PRAYER FOR RELIEF</u>

WHEREFORE, Plaintiffs respectfully pray that this Court grant judgment against Defendants for the following declarations and damages and relief in favor of Plaintiffs:

1.     A declaration that CFN exclusively owns all rights, title, and interests in the '456 patent application, and that Defendants do not have any ownership interests in the same;

2.     A declaration that Plaintiffs have the exclusive and unfettered right to practice

and

engage in the technology encompassed by the '456 patent application as against all named Defendants;

3.     A declaration that Plaintiffs do not infringe on any patents belonging to any of the Defendants;

4.     A declaration that Plaintiffs are entitled to an award of its attorneys' fees and reasonable costs incurred in this action; and

5.     A declaration that Plaintiffs be granted such other and further relief as this Court may deem just and proper.

Submitted this 24th day of April, 2009.

Respectfully submitted,

SIEBMAN, REYNOLDS, BURG,
   PHILLIPS & SMITH, L.L.P.

By: /s/ Clyde M. Siebman
   Clyde M. Siebman
   Texas Bar No. 18341600

300 N. Travis Street
Sherman, Texas 75090
(903) 870-0070
(903) 870-0066 Telefax
clydesiebman@siebman.com

Michael C. Smith
SIEBMAN, REYNOLDS, BURG,
   PHILLIPS & SMITH, L.L.P.
713 S. Washington Avenue
Marshall, Texas 75670
(903) 938-8900
(903) 767-4620 Telefax
michaelsmith@siebman.com

*Attorney for Plaintiffs CFN International LP
and Elan Global, Inc.*